UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
KAINE GOODWIN, as Trustee of IUE-CWA        :
Pension Fund,                               :
                                            :
                           Plaintiff,       :          CaseNo.:
                                            :
-against-                                   :
                                            :
HAWKER DAYTON CORPORATION and               :
WILLIAM DARROW II,                          :          **COMPLAINT**
                                            :
                           Defendants.      :
                                            :
------------------------------------------------------------- x

        Plaintiff Kaine Goodwin, a Trustee of IUE-CWA Pension Fund, by his attorneys,

Cohen, Weiss and Simon, LLP, as and for his complaint against defendants Hawker Dayton

Corporation (the "Company") and William Darrow II ("Darrow"), alleges as follows:

**<u>INTRODUCTION</u>**

        1.      This is an action by a Trustee of the IUE-CWA Pension Fund (the

"Fund"), a defined benefit pension plan, to collect withdrawal liability, interest, liquidated

damages, and attorney's fees and costs due under the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* and the terms of the Fund's

governing documents.  This action is directed against the Company, which was required, under

the terms of a collective bargaining agreement, to contribute to the Fund and which, once it

ceased operation, was required under ERISA and the Fund's governing documents to pay

withdrawal liability to the Fund.  This action is also directed at Darrow, who, as an officer of

Hawker-Dayton, following its dissolution, engaged in activities and conducted business on

behalf of or in the name of the Company beyond those activities required for the winding up of

the Company.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to Sections 502(e)(1), 502(f), 4212(c) and 4301(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(e)(1), 1132(f), 1392(c) and 1451(c), and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Fund is administered in this district.

## PARTIES

The Fund

4.      The Fund is an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A); a "multiemployer plan" within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A); and a "defined benefit plan" within the meaning of Section 3(35) of ERISA, 29 U.S.C. § 1002(35).

5.      The Fund is a jointly-administered employee benefit trust fund, composed of an equal number of labor and management representatives, and is established and maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).

6.      The Fund is maintained for the purpose of providing retirement benefits to eligible participants and beneficiaries.

7.      The Fund is administered in New York, New York, where the Trustees of the Fund hold meetings.  The Fund is also administered in its office at 2001 East Third Street, Bloomington, Indiana.

The Company

8.      At all relevant times, the Company has been a corporation organized under the laws of the State of Ohio.

9.      At all relevant times, the Company operated from a facility located at 2844 Culver Avenue in Dayton, Ohio 45429.

10.     At all relevant times, the Company has been in the business of manufacturing.

11.     At all relevant times, the Company has been an "employer" within the meaning of § 3(5) of ERISA, 29 U.S.C. § 1002(5).

12.     On January 4, 2007, the Ohio Tax Commissioner certified that the Company failed to file the necessary corporate franchise tax reports or pay any such taxes within the time prescribed by law.

13.     In accordance with Ohio Revised Code (O.R.C.) Section 5733.20, the Company was notified that the Office of the Secretary of State cancelled the Articles of Incorporation/Certificate of Authority for the Company.

Darrow

14.     At all relevant times, Darrow has been President of the Company.

15.     Darrow resides at 530 Fairground Road, Beaver Creek Township, Xenia, Ohio 45385.

**FACTUAL BASIS FOR CLAIMS**

Background Resulting in the Withdrawal Liability Owed to the Fund

16.     The Company and Local 81225, IUE-CWA (the "Union") have over the years been parties to a series of collective bargaining agreements (the "CBAs").

17.     Most recently, the Company was bound to a CBA with the Union for a term that began on June 30, 2017 and was to expire on June 30, 2020. (the "2017 CBA")

18.     Under the terms of the CBAs—including the 2017 CBA—the Company agreed to make periodic contributions to the IUE-CWA Pension Fund (formerly known as the

IUE AFL-CIO Pension Fund) for the purpose of providing retirement benefits to employees covered by the CBAs.

19. The Company also agreed to be a party to and to be bound by the Fund's Agreement and Declaration of Trust (the "Trust Agreement").

Darrow Continues to Conduct the Company's Business Following Dissolution

20. Throughout the period following its January 4, 2007 dissolution, Darrow continued to conduct business on behalf of the Company and to cause the Company to enter into contractual obligations.

21. On June 20, 2017, Darrow signed an agreement binding the Company to the 2017 CBA.

22. Throughout the period between January 4, 2007 and December 18, 2017 (the "Operating Period"), Darrow caused the Company to make contributions to the Fund on behalf of an employee.

23. Upon information and belief, throughout the Operating Period, Darrow caused the Company to continue operating.

The Company's Withdrawal from the Fund

24. On or about December 18, 2017 (the "Withdrawal Date"), the Company ceased all operations covered by the CBA and, as a result, as of that same date, the Company withdrew from the Fund in a complete withdrawal within the meaning of ERISA Sections 4201(a) and 4203(a)(2), 29 U.S.C. §§ 1381(a) and 1383(a)(2).

25. The Fund thereafter determined, under Section 4211 of ERISA, 29 U.S.C. § 1391, and Article X, Section 10.3 of the IUE-CWA Pension Fund Pension Plan (as amended and restated January 1, 2015, the "Pension Plan") that the Company, by completely withdrawing from the Fund, became liable to the Fund in the total amount of $247,339 in withdrawal liability.

The Fund also determined that the Company had to pay $2,051.83 in eighty (80) quarterly

installments to satisfy the total $247,339.00 in withdrawal liability due.

26.     By letter dated January 2, 2018 to the Company, the Fund demanded

payment of the $247,339 in withdrawal liability through the payment of eighty (80) quarterly

installments of $2,051.83 each, with the first quarterly payment due on March 1, 2018.

27.     The Company failed to make the initial quarterly installment payment that

was due to the Fund due on March 1, 2018.

28.     Pursuant to ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5), and

Section 10.8 of the Plan Document, the failure of the Company to make quarterly payments

when due and the failure to make any withdrawal liability payments meant that the Fund could

require the Company to immediately pay the total outstanding withdrawal liability amount, plus

accrued interest on this amount and liquidated damages from the due date of the first payment

that the Company failed to pay.

29.     By letters dated March 6, 2018 and April 4, 2018 (the "Notices of

Default"), the Fund notified the Company that the initial withdrawal liability payment had not

been received and that if the payment—with interest due for the late payment—was not received

within sixty (60) days of receipt of the March 6, 2018 Notice of Default, the Company "will be

deemed to be in default" and the Fund would require immediate payment of the full amount of

the withdrawal liability owed.

30.     By letter dated June 25, 2018, the Fund's counsel reiterated to the

Company that the full amount of withdrawal liability was due and indicated that a lawsuit would

be filed if the payment, with damages, were not received by July 16, 2018.

31.    Section 4301(b) of ERISA, 29 U.S.C. § 1451(b), provides that in an action "to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution" within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.

32.    Section 515 of ERISA, 29 U.S.C. § 1145, provides that every employer "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

33.    The Trust Agreement provides, in Section 4(b):

> Non-payment by an Employer of any contributions when due shall not relieve any other Employer of its obligation to make payments. In addition to any other remedies to which the parties may be entitled, an Employer in default for ten working days shall be subject to payment of the largest aggregate amount permitted under ERISA of liquidated damages, interest and other costs and expenses, incurred by the Fund and arising out of the collection of such Employer's delinquent contributions, withdrawal liability payments or other payments.  The interest rate to be applied for the collection of delinquent contributions, withdrawal liability payments and other payments shall be the rate of one percent (1%) per month, unless otherwise established by law.

34.    Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515] in which a judgment in favor of the plan is awarded, the court shall award the plan,
> the unpaid contributions,
> (a)    interest on the unpaid contributions,
> (b)    an amount equal to the greater of
>     (i)    interest on the unpaid contributions or;
>     (ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],

(c)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(d)     such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan…

35.     The Company has not made any payment of its withdrawal liability, requested review of the withdrawal liability assessment, or initiated arbitration of the withdrawal liability assessment.

Control Group Liability

36.     Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), provides in relevant part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."

37.     All trades or businesses under common control with the Company at the time of the Company's withdrawal (the "Control Group") are jointly and severally liable, with the Company and Darrow, for the Company's withdraw liability and attendant damages.

## FIRST CAUSE OF ACTION -- ERISA

38.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

39.     By reason of its failure to make withdrawal liability payments within sixty (60) days of receipt of the Notice of Default, the Company is in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Pension Fund is entitled to immediate payment of the $247,339 in withdrawal liability, plus accrued interest at the rate of one percent per month from March 1, 2018, the due date of the first payment, until the date of judgment, liquidated damages in an amount equal to the greater of (a) the accrued interest or (b)

20% (twenty percent) of the withdrawal liability amount, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), and the Trust Agreement.

## SECOND CAUSE OF ACTION -- OHIO REVISED CODE § 1701.88

40.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

41.    Darrow engaged in activities and conducted business on behalf of or in the name of the Company, after Hawker Dayton's dissolution, exceeding those activities required for the winding up of the Company, as provided for under Ohio Revised Code § 1701.88, thereby making Darrow individually liable for such actions

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court enter judgment against the defendants as follows:

1.    Ordering the defendants to pay the Fund the sum of $247,339 in withdrawal liability pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b);

2.    Ordering the defendants to pay the Fund interest on the withdrawal liability at the rate of one percent (1%) per month pursuant to ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement;

3.    Ordering the defendants to pay the Fund an amount equal to the greater of (a) interest at the rate of one percent (1%) per month on the withdrawal liability, or (b) an amount not to exceed twenty percent (20%) of the withdrawal liability pursuant to ERISA

Sections 502(g)(2)(C) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(C), and 1451(b), and the Trust

Agreement;

      4.      Ordering the defendants to pay the Fund the reasonable attorneys' fees and

costs of this action pursuant to ERISA Sections 502(g)(2)(D) and 4301(b), 29 U.S.C.

§§1132(g)(2)(D) and 1451(b), and the Trust Agreement;

      5.      Ordering the defendants to identify any members of the Control Group;

and

      6.      Granting such other and further relief as the Court deems appropriate.

Dated:  May 10, 2019
       New York, NY

                        Respectfully submitted,

                        */s/ Tzvi N. Mackson*
                        Lisa M. Gomez
                        Tzvi N. Mackson
                        COHEN, WEISS and SIMON LLP
                        900 Third Avenue, 21st Floor
                        New York, NY 10022
                        (212) 563-4100
                        lgomez@cwsny.com
                        tmackson@cwsny.com

                        *Attorneys for Plaintiff*